IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert J. Robinson, M.D., | Civil Action No. 2:13-cv-01916-RMG |
| Plaintiff, | |
| v. | **ORDER** |
| Carealliance Helath Services d/b/a Roper St. Francis Healthcare; Bon Secours St. Francis Xavier Hospital, Inc.; Franklin C. Fetter Family Health Center, Inc.; Steven Shapiro, M.d.; Allen Carroll; and Laura Celia, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss and Motion to Stay (Dkt. No. 46). As explained herein, the Court adopts only a portion of the Magistrate's Report and Recommendation ("R&R") and DENIES Defendants' Motion to Dismiss.

## I. Background

This case is a civil action filed by Plaintiff Robert Robinson, M.D., an obstetrician and gynecologist who, until 2013, provided delivery and other OB/GYN services to patients at Roper St. Francis Healthcare and Bon Secours St. Francis Xavier Hospital in Charleston, SC. He previously held Medical Staff Privileges at both hospitals, and has delivered thousands of babies and performed thousands of procedures at the two hospitals. R&R at 1-2. At the end of December 2012, Roper St. Francis Hospital closed its labor and delivery services, and all of Plaintiff's Roper St. Francis patients were thereafter treated at Bon Secours St. Francis Hospital (hereinafter "St. Francis Hospital"). (Dkt. No. 39 at 7).

On February 7, 2013, Plaintiff performed a complicated Caesarian delivery while sitting on a stool. According to multiple reports filed by medical staff, including another OB/GYN who assisted at the birth, Plaintiff was unable to properly view the surgical field he was operating in, and unable to properly handle the baby or address hemorrhaging after the delivery. R&R at 3; Dkt. Nos. 46-2, 46-3, 46-4. The patient later developed a serious infection. *Id.* Following this delivery, the Medical Executive Committee ("MEC"), which oversees medical professionals providing treatment at St. Francis Hospital, convened an ad hoc committee to review Plaintiff's competency. Upon the MEC's suggestion, delivered in a letter from Defendant Jeffrey Rieder, acting as Chairman of the MEC dated March 25, 2013 (Dkt. No. 46-2), Plaintiff took a six week medical leave of absence, and has since been involved in various attempts to regain his ability to practice medicine at both hospitals. According to his Second Amended Complaint, it is medically necessary, and reasonable in light of his duties at the hospital, that he deliver babies and complete other medical tasks from a stool, rather than standing, because of a 2012 foot fracture and surgical procedure stemming from his diabetic condition. (Dkt. No. 39 at 4-8).

Plaintiff filed suit on July 12, 2013. His amended complaint alleges one federal cause of action for violating of the Americans with Disabilities Act ("ADA"). (Dkt. No. 39). The ADA claim alleges that under Title III of the ADA, codified at 42 U.S.C. § 12181-12189, St. Francis Hospital was obligated to provide Plaintiff with reasonable accommodation, in the form of allowing him to use a rolling stool and allowing nurses to carry babies for him, thus permitting him to use St. Francis' "public accommodations." He alleges that his medical privileges have been unfairly "jerked" on pretextual grounds, and that his livelihood is threatened by the hospital's refusal to allow him to practice medicine with the stool as an accommodation in

2

violation of the ADA. The complaint also lists eight additional claims sounding in state tort and contract law. *Id.*

Magistrate Judge Dixon filed an R&R on August 5, 2014, recommending that the federal ADA claim be dismissed and the pendant state law claims dismissed without prejudice. Plaintiff is currently without counsel because his attorneys withdrew from the case after submitting the filings presently under consideration. Under the Fifth Amended Scheduling Order (Dkt. No. 89), discovery is due to end on October 15, 2014. Defendants submitted an objection to the R&R on August 18, 2014 (Dkt. No. 94) arguing that this Court should dismiss the state claims with prejudice rather than without prejudice.

## II. Discussion

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### B. Title III of the Americans with Disabilities Act

Defendants argued that Plaintiff has failed to state a cognizable claim under Title III of the ADA because the services it provides Plaintiff – hospital facilities where he has practiced medicine for many years – are not "a 'place of public accommodation' within the contemplation of" the ADA. (Dkt. No. 36 at 14). In other words, Plaintiff has not alleged facts sufficient to show he meets a threshold requirement for ADA protection. A hospital is, of course, generally defined by the ADA as a place of public accommodation. 42 U.S.C. § 12181(7)(F). Defendants' position, though, is that because Plaintiff is a doctor engaging in medical treatment within the hospital, rather than being treated there, that the "medical staff and privileging decisions"

4

regarding his presence there do not "fall within the 'goods, services, facilities, privileges, [or] advantages' offered to the public at large." (Dkt. No. 46 at 14). Defendants urge the Court to compare this situation to that of a 1997 Sixth Circuit case, *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, where an employee insured through the employer's long-term disability plan was unsuccessful in bringing a claim under Title III because employee insurance plans are not "goods, services, facilities, privileges, [or] advantages" offered to the public. The Court explained that Title I, not Title III, is the appropriate statutory framework for analyzing discrimination in employment practices. *Id.* at 1014-15. Defendants argue that, like an employee insurance plan, admitting privileges are not services "offered to the public at large."

On its face, *Parker* is an ill fit to the facts at hand, because it is evident that a business's relationship with its employees is fundamentally different than its relationship with any other individuals utilizing its facilities, either as a provider or receiver of healthcare services. *Parker* stood for the proposition that if an employee alleges discrimination *within the employee-employer* relationship, then Title I, rather than Title III, guides the court's analysis. Here, no one has alleged that Plaintiff is an employee at the hospital; Defendants seem to only argue that he is *not* a member of the public seeking services at the hospital – i.e. not a patient – and is therefore apparently not covered by the ADA at all. The theory that physicians with certain hospital privileges belong to a class– not employees and not patients – that has no right at all to sue for discrimination under the ADA is not one that is supported by *Parker* or any other Circuit Court case, and not one that this Court is prepared to adopt at this time.

Plaintiff relies heavily on *Menkowitz v. Pottstown Mem'l Medical Ctr.*, 154 F.3d 113 (1998). In that case, the Third Circuit engaged in a careful and comprehensive analysis of Title III's legislative history and concluded that a physician with medical staff privileges at a

5

defendant hospital is an "individual" properly entitled to reasonable accommodations pursuant to Title III. *Id.* at 120-122. As that opinion explains,

> We . . . hold that a medical doctor with staff privileges-one who is not an employee for purposes of Title I-may assert a cause of action under Title III of the ADA as an "individual" who is denied the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." Our conclusion is reinforced by several observations. First, we may effectively find no recourse under the ADA for the appellant if we were to hold that the he has no cause of action under Title III. That is, the appellant may not be a "qualified individual" under Title I because there was no employment relationship with a covered entity, and the appellant would not be protected under Title III because he is not an "individual" who is denied the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." We cannot see how Congress intended such a result given the ADA's remarkable breadth of language and purpose-especially when Congress expressly states that it seeks to comprehensively regulate "discrimination against individuals with disabilities in such critical areas as ... health services." 42 U.S.C. § 12101(a)(3). Second, nothing in the Rehabilitation Act would prevent a physician with staff privileges from asserting a cause of action based on disability discrimination. *See Landefeld v. Marion General Hospital,* 994 F.2d 1178 (6th Cir. 1993). Not finding a similar cause of action under the ADA would lead to the perverse result that the ADA affords less protection than the Rehabilitation Act to a discrete class of disabled individuals. This squarely contradicts the language and intent of the ADA. *See* 42 U.S.C. § 12201(a). Finally, the administrative guidance issued by the Justice Department interprets Title III to allow a cause of action for physicians with staff privileges. *See* U.S. Dep't of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III Technical Assistance Manual ¶ 4.1100, illus. 4 (Nov.1993). As the agency charged by Congress to issue implementing regulations, the Department's views are entitled to deference.

*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122-23 (3d. Cir. 1998).

The Court also noted, of course, that "in no way would a hospital be forced to accommodate an unqualified physician if he "poses a direct threat to the health and safety of others." *Id.* (citing 42 U.S.C. § 12182(b)(3)).

This Court is not convinced that *Parker* provides better guidance in the case at hand than *Menkowitz*, or that *Menkowitz* is in tension with the Supreme Court's decision in *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001). On the contrary, *PGA Tour* clearly states that the phrase "public

6

accommodation" should be "construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *PGA Tour,* 532 U.S. at 666–67 (internal quotation marks omitted). As the Supreme Court explained, in keeping with *Menkowitz*, Title III's broad general rule banning discrimination contains no "clients or customers" wording that would limit access to Title III coverage to that class. *Id.* at 679; 42 U.S.C. § 12182 ("(a) General rule; No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.") The Fourth Circuit seems not to have addressed the scope of Title III coverage. R&R at 6. But even if the "clients or customers" requirement were applied generally, Defendants have not argued, and the Court is not prepared to find on a motion to dismiss, that a doctor with hospital privileges is not a "client or customer" within the very broad outlines of that category as defined by the Supreme Court in *PGA Tour*. *See PGA Tour*, 532 U.S. at 680 ("That petitioner identifies one set of clients or customers that it serves . . . does not preclude it from having another set . . . against whom it may not discriminate.")

As the R&R explains, a handful of district courts have imposed the "clients and customers" restriction on Title III, and dismissed ADA claims by doctors with admitting privileges at hospitals. R&R at 7. But the weight of authority postdating *PGA Tour* adopts the *Merkowitz* reasoning, allowing claims by doctors and other similarly situated independent contractors. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th. Cir. 2007); *Hetz v. Aurora Med. Ctr. of Manitowoc Cnty.*, WL 1753428 (E.D. Wis. 2007); *Jensen v. United First Fin.*, 2009 WL 5066683 (D. Utah 2009). In sum, no controlling, or even persuasive, authority exists to find that

7

as a matter of law, the Plaintiff's position as a non-employee physician with staff privileges at the defendant hospital precludes him from stating a claim as an "individual" entitled to reasonable accommodations under Section III of the ADA.

### C. Primary Jurisdiction, Health Care Quality Improvement Act, and Ripeness

The Court agrees with the Magistrate Judge's rulings on Primary Jurisdiction, immunity under the Health Care Quality Improvement Act, and ripeness, and declines to dismiss Plaintiff's claims on these grounds. The Court is not persuaded that the MEC is an administrative body that will promote national uniformity in the field of regulation, or that the factual development of this case is outside the expertise of the court system such that it should turn to administrative procedures for assistance. *See* R&R at 9-13; *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F.3d 65 (2d Cir. 2002); *Far East Conference v. United States*, 342 U.S. 570 (1976). Immunity under the HCQIA is limited to situations where damages are sought for claims not related to the civil rights of any person or persons; it is not applicable here. R&R at 15; 42 U.S.C. § 11111(a)(1)(D). Finally, Defendants assert that the case is not yet ripe for adjudication, since the MEC has not finished its proceedings. As the Magistrate Judge pointed out, Title III of the ADA does not require administrative exhaustion, and because Plaintiff alleges that Defendants' discriminatory acts took place in February 2013 and continuously in the time since then, his claim has been ripe for some time.

### D. Remaining pendant state claims

Having declined to adopt the Magistrate's recommendations with respect to Plaintiff's federal claim, the Court also retains jurisdiction over the pendant state law claims that Plaintiff has pled against the Defendants.

### III. Conclusion

8

For the reasons identified herein, the court adopts Parts II, III, IV, and V of the R&R Discussion, and declines to adopt the R&R's analysis in Part I regarding Plaintiff's Title III claim. Defendants' Motion to Dismiss and Motion to Stay (Dkt. No. 47) is **DENIED**. The Court **RECOMMITS** this matter to the Magistrate Judge for further proceedings.

**IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

September 4, 2014
Charleston, South Carolina

9